# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Jordan Dangelo Waire,

       Petitioner,

                                Case No. 5:21-cv-11728

v.                                     Hon. Judith E. Levy

George Stephenson,

       Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Jordan Dangelo Waire ("Petitioner") was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and three counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Kalamazoo County Circuit Court. (ECF No.

2, PageID.25.) He was sentenced, as a third habitual offender, Mich. Comp. Laws § 769.11, to life without parole on the murder conviction, a concurrent term of 30 to 50 years in prison on the armed robbery conviction, a concurrent term of 6 to 10 years in prison on the felon in possession conviction, and concurrent terms of 2 years in prison on the felony firearm convictions to be served consecutively to the other sentences in 2018. (ECF No. 8-1, PageID.197–198.)

In his pleadings, Petitioner raises claims concerning the jury instructions, his right to testify and the effectiveness of trial counsel, the admission of gruesome photographs and the effectiveness of trial counsel, and the admission of his co-defendant's preliminary examination testimony at trial. (ECF Nos. 1, 2.) For the reasons set forth, the Court denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.   Background

Petitioner's convictions arise from the shooting death of Western Michigan University student Jacob Jones at his apartment in Kalamazoo, Michigan in 2016. The Michigan Court of Appeals described

2

the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On December 8, 2016, Jacob Jones, a student at Western Michigan University (WMU), was shot and killed in his apartment in Kalamazoo, Michigan. At trial, defendant's codefendant, Joeviair Kennedy, invoked his right to remain silent, which resulted in the trial court declaring Kennedy an unavailable witness under MRE 804(b)(1) and permitting the prosecution to show the jury a video of Kennedy's previous testimony at defendant's preliminary examination.
>
> During that testimony, Kennedy admitted that he and defendant committed the armed robbery at Jones's apartment that resulted in Jones's death, and he described at length what transpired. Specifically, Kennedy, who played basketball for WMU at the time, testified that on the evening of December 8, defendant picked him up after basketball practice and time at the study table. They went back to the apartment where defendant was staying. Defendant showed him a .40 caliber gun and asked him whether he knew "anyone that we can rob." Kennedy suggested Jones. Together, defendant and Kennedy drove to Jones's apartment. Defendant wore a bandana to conceal his face and Kennedy shrouded his identifiable hair in the hood of his sweatshirt. When they entered the apartment, there were a few other people present in addition to Jones. Defendant immediately waived the gun at everyone and demanded marijuana. When they said they didn't have any, defendant

3

pointed the gun at Jones and shot him in the head. Defendant then pursued his demands for marijuana, collected four grams of marijuana and around $25, and demanded everyone's cell phones. As defendant and Kennedy prepared to leave, one of the robbery victims tackled defendant. Kennedy intervened by getting on top of the victim and throwing punches, freeing defendant. Kennedy and defendant fled together. However, Kennedy left his cell phone at the scene. At trial, the other victims who were in Jones's apartment that night corroborated Kennedy's testimony. One witness testified that defendant pistol whipped Jones before shooting him. Jones died from a gunshot wound to the face.

After recovering his cell phone at the scene of the crime, the police identified Kennedy as a suspect and executed a search at his apartment. They recovered a gray and black WMU Adidas sweatshirt. Inside the pocket of the sweatshirt, law enforcement discovered a red bandana and a Winchester .40 caliber bullet shell casing. They also recovered a cell phone belonging to one of the robbery victims in a wooded area behind Kennedy's apartment. Further investigation revealed that defendant and another individual, Michael Dobson, purchased Winchester .40 caliber bullets at a Meijer in Kalamazoo on the day of the robbery. Dobson, defendant's friend, testified that he saw defendant with a gun and that defendant asked him to purchase the ammunition because defendant had forgotten his wallet. He also saw defendant and Kennedy together later that evening "acting irate," and he noticed that they had changed their clothes. A ballistics expert explained that the recovered bullet casing matched the bullet recovered during Jones's autopsy. In addition to

> Kennedy's testimony, several of the victims were able to identify defendant at trial as the shooter. The prosecution also presented evidence that in January 2017, while incarcerated at the Kalamazoo County jail, defendant asked another inmate to relay a message to Kennedy "not to open his mouth about the case" and "to tell him that snitches get stiches." Defendant did not present any evidence at trial. The jury found defendant guilty of all charges.

*People v. Waire*, No. 344785, 2019 WL 6340826, at *1–2 (Mich. Ct. App. Nov. 26, 2019).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions and sentences. *Id*. at *2–6. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Waire*, 505 Mich. 1043 (2020).

Petitioner, through counsel, then filed his federal habeas petition. He raises the following claims:

I.   The trial court refused to instruct the jury on the lesser-included offense of involuntary manslaughter, in violation of the Fourteenth Amendment.

II.   Petitioner was denied his right to testify at trial, and defense counsel was ineffective for failing to inquire into Petitioner's desire to testify, in violation of the Fifth, Sixth, and Fourteenth Amendment.

III.   The admission of gory autopsy photographs violated Petitioner's right to a fair trial, and counsel was ineffective for failing to object to their admission, contrary to the Sixth and Fourteenth Amendment.

IV.   The admission of Kennedy's preliminary examination testimony at trial violated Petitioner's Sixth Amendment right to confront and cross-examine the witness against him.

(ECF No. 1, PageID.7–9.) Respondent filed an answer to the petition contending that it should be denied because a portion of one claim is barred by procedural default and all of the claims lack merit. (ECF No. 7.)

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

7

nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Id*. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"A state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014). "[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S.

9

312, 316 (2015). A habeas petitioner cannot prevail so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002)).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, Respondent contends that a portion of Petitioner's third claim is barred by procedural default. (ECF No. 7, PageID.156–157.) The Court declines to address this procedural defense as it is not a jurisdictional bar to a review of the merits. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Such is the case here. The procedural issue is complex and intertwined with the ineffective assistance of trial counsel claim, and the substantive claims are more readily decided on the merits. Accordingly,

12

the Court will proceed to the merits of Petitioner's claims.

## B. Merits

### i. *Jury Instructions*

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in failing to instruct the jury on lesser offense of involuntary manslaughter. (ECF No. 2, PageID.47.) Respondent contends that this claim lacks merit. (ECF No. 7, PageID.138.)

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *United States v. Watson*, 778 F. App'x 340, 355 (6th Cir. 2019). The failure to give an instruction that is supported by the evidence does not automatically

justify habeas relief; the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71–72; *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).

The Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> "A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *Dobek*, 274 Mich. App. at 82. In *People v. McMullan*, 284 Mich. App. 149, 152; 771 N.W.2d 810 (2009), aff'd 488 Mich. 922; 789 N.W.2d 857 (2010), this Court set forth the legal analysis for determining whether a trial court must instruct the jury on involuntary manslaughter as a lesser included offense of murder:
>
> > A homicide committed with malice is murder. *People v. Mendoza*, 468 Mich. 527, 534-536, 664 N.W.2d 685 (2003). In contrast, the unintentional killing of another, "'committed with a lesser mens rea of gross negligence or an intent to injure, and not malice,'" is common-law involuntary

manslaughter. [*People v. Gillis*, 474 Mich. 105, 138; 712 N.W.2d 419 (2006)], quoting *People v. Holtschlag*, 471 Mich. 1, 21-22, 684 N.W.2d 730 (2004). Common-law involuntary manslaughter is a necessarily included lesser offense of murder. *Mendoza*, [468 Mich] at 540-542. If a defendant is charged with murder, the trial court should instruct the jury on common-law involuntary manslaughter, but *only if the instruction is supported by a rational view of the evidence. Id.* at 541....

To find involuntary manslaughter, a defendant must not act with malice. *Gillis*, [474 Mich. at 138]. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868 (1998). "[M]alice is implied when the circumstances attending the killing demonstrate an abandoned and malignant heart ...." *Id.* at 467. It can also "be inferred from the use of a deadly weapon." *People v. Bulls*, 262 Mich. App. 618, 627; 687 N.W.2d 159 (2004). [Emphasis added.]

In sum, defendant was entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding that Jones's death was "caused by an act of gross negligence or an intent to

injure, and not malice." *Gillis*, 474 Mich. at 138 (quotation marks and citation omitted). When determining whether an involuntary manslaughter charge was necessary, this Court must "review all of the evidence irrespective of who produced it to determine whether it provides a rational view to support an instruction on the lesser charge" and should reverse the trial court's decision to omit the jury instruction only where substantial evidence supported giving the instruction. *See People v. McMullan*, 488 Mich. 922, 922; 789 N.W.2d 857 (2010).

Defendant contends that the trial court should have instructed the jury on involuntary manslaughter.[1] In the present case, the evidence demonstrated that defendant purchased ammunition for his firearm earlier in the day and purposefully targeted a particular victim. Enlisting his friend Kennedy to help, defendant entered Jones's apartment with a loaded firearm and quickly used the firearm to pistol-whip and shoot Jones. Even after he shot Jones, defendant did not disengage but continued to perpetuate the robbery and threaten shooting others. No rational view of defendant's conduct and the circumstances of the crime, including the use of a deadly weapon, could support a finding of gross negligence or intent to injure without malice. *See Gillis*, 474

---

[1] Defendant proclaims error in the failure to give the involuntary manslaughter instruction, but essentially concedes in his brief that the facts admitted into evidence do not rationally support the instruction because defendant was not asked if he wanted to testify, which is addressed in the next issue on appeal, and because defense counsel called no witnesses who might have supported an accidental version of the shooting, but defendant identifies no such witnesses who would have possessed such information.

16

Mich. at 138. Because no substantial evidence supports giving an involuntary manslaughter instruction, *McMullan*, 488 Mich. at 922, we conclude that the trial court did not abuse its discretion by not instructing the jury on the lesser offense.[2]

*Waire*, 2019 WL 6340826, at *2–3 (footnotes and alterations in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner contests the Michigan Court of Appeals' interpretation of state law as to this issue, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497

---

[2] Even if the trial court should have instructed the jury on involuntary manslaughter, failure to do so would constitute harmless error. The trial court instructed the jury on first-degree felony-murder and on second-degree murder, and the jury convicted on the greater offense. If the jury had any doubts that defendant committed first-degree felony murder, it could have convicted defendant of the lesser charge of second-degree murder. Its refusal to do so indicates a lack of likelihood that it would have convicted defendant of the lesser charge of involuntary manslaughter. *See People v. Beach*, 429 Mich. 450, 490-491; 418 N.W.2d 861 (1988), *superseded by statute on other grounds as stated in People v. Smith-Anthony*, 494 Mich. 669 (2013); *see also People v. Sullivan*, 231 Mich. App. 510, 520; 586 N.W.2d 578 (1998).

U.S. 764, 780 (1990). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67–68.

Second, Petitioner fails to establish that the trial court's refusal to instruct the jury on involuntary manslaughter rendered his trial fundamentally unfair. The Supreme Court has declined to decide whether due process requires jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014). As a result, the Sixth Circuit has held that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). Because first-degree murder is a non-capital offense in Michigan, *Scott*, 302 F.3d at 606, an involuntary manslaughter instruction was not constitutionally required at trial. *See also Tegeler v. Renico*, 253 F. App'x 521, 524–25 (6th Cir. 2007) (holding that due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner

18

received a life sentence and was not eligible for parole). Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

The Sixth Circuit has further stated that a claim that the state court was required to instruct the jury on a lesser-included offense "warrants habeas relief, if at all, only in the rare instance that 'a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law.'" *Richardson v. Campbell*, No. 21-3421, 2021 WL 6773144, at *2 (6th Cir. Nov. 2, 2021) (quoting *Bagby*, 894 F.2d at 795), *cert. den.*, 142 S. Ct. 1389 (2022). Petitioner makes no such showing.

Moreover, even if Petitioner states a cognizable claim, he fails to show that the trial court's refusal to give an involuntary manslaughter instruction rendered his trial fundamentally unfair. As explained by the Michigan Court of Appeals, such an instruction was not warranted based upon the evidence at trial which showed that Petitioner purchased ammunition before the crime, used a loaded gun to strike and shoot the

19

victim in the head during the commission of a planned armed robbery, and continued to rob and threaten others at the apartment before fleeing the scene. *Waire*, 2019 WL 6340826, at *3. Such actions were sufficient to establish that he acted with malice, i.e., the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. An involuntary manslaughter instruction was not supported by the evidence at trial.

Finally, as noted by the Michigan Court of Appeals, "[e]ven if the trial court should have instructed the jury on involuntary manslaughter, failure to do so would constitute harmless error" because the jury convicted Petitioner of first-degree murder and rejected the lesser verdict of second-degree murder. *Id.* at *3 n.2; *see also Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005) (reasoning that jury's decision to convict petitioner of first-degree felony murder "strongly suggests" that the trial court's failure to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter was at most harmless error because the jury was instructed on the lesser-included offense of second-degree murder

but "chose felony murder over second-degree murder"). In other words, because the jury chose first-degree murder over second-degree murder, there is no basis to believe that it would have opted for a lesser offense of manslaughter over first-degree murder.

The lack of an involuntary manslaughter instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), nor did the trial court unreasonably apply the harmless error standard. *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) (holding that a petitioner must satisfy *Brecht* and AEDPA standards to obtain habeas relief). Habeas relief is not warranted on this claim.

### ii.   *Right to Testify & Effectiveness of Counsel*

Petitioner next asserts that he is entitled to habeas relief because defense counsel was ineffective for not advising him or inquiring about his desire to testify at trial; as such, Petitioner argues he was denied his right to testify at his trial. (ECF No. 2, PageID.59.)

A criminal defendant has a constitutional right to testify on his or

21

her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52–53 (1987); *see also id.* at 53 n.10. "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). A trial court is not required to inquire as to whether a defendant knowingly, voluntarily, and intelligently waives the right to testify. *Id.* at 551–52; *see also Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010). Waiver of the right to testify may be inferred from a defendant's conduct and is presumed when the defendant fails to testify or notify the trial court of the desire to testify. *Hodge v. Haeberlin*, 579 F.3d 627, 639–40 (6th Cir. 2009) (citing *Webber*, 208 F.3d at 551).

Defense counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Webber*, 208 F.3d at 551. On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge*, 579 F.3d at 639. If the defendant wants to testify, "he can reject his attorney's

tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." *Id*. If the defendant fails to do so, waiver of the right to testify is presumed. *Id*.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is "highly deferential." *Id*. at 689. There is a strong

23

presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 687.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. *Id.* On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing

their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on this claim. The court explained:

> Defendant relates that the record reflects no colloquy concerning defendant's right to remain silent or to choose to testify. Because of the absence of any discussion on the record, defendant argues that trial counsel and the trial court unlawfully precluded defendant from making the decision for himself whether to testify. We disagree.

> "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v. Trakhtenberg*, 493 Mich. 38, 47; 826 N.W.2d 136 (2012). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51.

In the present case, defendant did not move in the trial court for a new trial or for an evidentiary hearing. Therefore, our review is for mistakes apparent on the record. *People v. McFarlane*, 325 Mich. App. 507, 527; 926 N.W.2d 339 (2018). We review de novo "whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *Id*.

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v. Bonilla-Machado*, 489 Mich. 412, 419; 803 N.W.2d 217 (2011). Although it would have been prudent to do so, there is no formal requirement that counsel or the trial court memorialize an on-the-record waiver of a defendant's decision not to testify. *See People v. Harris*, 190 Mich. App. 652, 661; 476 N.W.2d 767 (1991) (recognizing that "there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify"). Therefore, contrary to defendant's argument, the absence of a colloquy memorializing defendant's election not to testify does not necessarily support the conclusion that defense counsel's performance was deficient. Even assuming that trial counsel failed to inform defendant of his right to testify, defendant has not established entitlement to relief.

In *People v. Simmons*, 140 Mich. App. 681, 685-686; 364
N.W.2d 783 (1985), we held that, even assuming defense
counsel did not inform the defendant of his right to testify,
there was no basis for relief on an ineffectiveness of counsel
claim when the defendant failed to allege that he was ignorant
of his right to testify in his own defense, "d[id] not allege that
he would have testified if presented with the option[,]" and
provided "no indication of what his testimony would have
been." In the present case, as in *Simmons*, there is simply
nothing in the existing record to show that defendant was
ignorant of the right to testify, that he would have testified if
given the chance, or that the substance of his testimony would
have had any likelihood of undermining confidence in the
jury's verdict. Because defendant has not shown that his
attorney's performance fell below an objective standard of
reasonableness under prevailing professional norms and that
he suffered prejudice therefrom, defendant's claim of
ineffective assistance of counsel necessarily fails. *McFarlane*,
325 Mich. App. at 527.

*Waire*, 2019 WL 6340826, at *3–4.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.

Petitioner argues that the Michigan Court of Appeals' decision was

"objectively unreasonable . . . to reject this claim for lack of record

support" because "the Court of Appeals did not remand for an evidentiary

hearing" and "refuse[d] to allow Petitioner to provide that record

support." (ECF No. 2, PageID.70.) In support, Petitioner cites Michigan Court Rule 7.211(C)(1), which describes the procedure for an appellant's motion to remand to the trial court.

Petitioner's argument is not convincing. Petitioner does not demonstrate an entitlement to an evidentiary hearing or an opportunity to "provide that record support." (ECF No. 2, PageID.70.) Petitioner already had an opportunity to create such a record: during his trial proceedings. Further, Michigan Court Rule 7.211(C)(1) does not lend support to Petitioner's argument because the state court records do not demonstrate that Petitioner submitted a motion to remand for an evidentiary hearing.[3]

Additionally, Petitioner does not present any evidence to show that he was misled, was uninformed about his rights, or believed that he could not testify in his own defense. "[A] 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other

---

3 Petitioner, in his brief at the Michigan Court of Appeals, requested that the Michigan Court of Appeals "vacate his conviction and/or remand for a new trial." (ECF No. 8-12, PageID.1242.) This does not appear to be a motion to remand for an evidentiary hearing.

action on his claim that his right to testify in his own defense was denied him . . . . Some greater particularity is necessary [] to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'" *Cistrunk v. Campbell*, No. 2:12-CV-12568, 2020 WL 376454, at *17 (E.D. Mich. Jan. 23, 2020) (quoting *McCoy v. Bock*, No. 01-10052, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003)). Conclusory allegations, without evidentiary support, are insufficient to warrant habeas relief. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006). Petitioner did not attempt to testify at trial, nor did he notify the trial court of his desire to do so. Waiver of the right to testify is therefore presumed–and Petitioner fails to rebut that presumption or to otherwise show that counsel rendered ineffective assistance on this basis. *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).

Petitioner fails to establish that he was denied his right to testify or that counsel was ineffective. Habeas relief is not warranted on this claim.

### iii.   *Admission of Photos & Effectiveness of Counsel*

29

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting gruesome autopsy photographs of the victim and defense counsel was ineffective for failing to object to their admission at trial. (ECF No. 2, PageID.71.) Respondent contends that this claim is procedurally defaulted and that it lacks merit. (ECF No. 7, PageID.156.)

Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68; *Serra v. Michigan Dep't. of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007)).

The Michigan Court of Appeals denied relief on this claim. The

court explained:

> "The decision to admit or exclude photographs is within the sole discretion of the trial court." *People v. Mills*, 450 Mich. 61, 76; 537 N.W.2d 909 (1995), mod 450 Mich. 1212 (1995). Our Supreme Court emphasizes that "[g]ruesomeness alone need not cause exclusion" and "[t]he proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id.* at 76. In Mills, our Supreme Court set forth the correct analysis for determining whether photographs are unduly prejudicial:
>
>> Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors. Generally, also, the fact that a photograph is more effective than on oral description, and to the extent calculated to

excite passion and prejudice, does not render it inadmissible in evidence. [*Id.* at 76-77 (quotation marks and citations omitted).]

In this case, the prosecution used the challenged photographs to identify the victim and to both supplement and corroborate testimony concerning the nature, type, and location of the victim's injuries.[4] This Court has approved of the use of autopsy photographs for these purposes. *See People v. Unger*, 278 Mich. App. 210, 257; 749 N.W.2d 272 (2008); *see also People v. Ho*, 231 Mich. App. 178, 188; 585 N.W.2d 357 (1998) (holding that admission of gruesome photographs was proper where there was a legitimate purpose other than arousing the sympathies or prejudices of the jury). Moreover, even assuming that the trial court plainly erred in admitting the photographs, defendant cannot demonstrate that the error affected the outcome of trial. *See Carines*, 460 Mich. at 763. There was significant evidence directly establishing defendant's guilt, including the preserved testimony of his codefendant and direct testimony from several victims who were able to identify defendant as the shooter. Moreover, there was evidence establishing that defendant attempted to prevent his codefendant from testifying through threats and

---

[4] Specifically, Dr. Joseph Pralow, a forensic pathologist and deputy medical examiner, used the photographs to explain where Jones was shot, how close the gun was to the bullet's point of entry, the likely pathway of the bullet and its resulting damage, and other injuries suffered by Jones. That the gunman held the gun close to the victim's face when he shot him, and that he used the gun to pistol-whip the victim was circumstantial evidence relevant to the question of whether defendant acted with malice, an element of the charged crimes. *See People v. Unger*, 278 Mich. App. 210, 257; 749 N.W.2d 272 (2008) (concluding that photographs that address matters at issue are relevant and not unduly prejudicial).

intimidation. *See People v. Sholl*, 453 Mich. 730, 740; 556 N.W.2d 851 (1996) (acknowledging that a defendant's threat against a witness demonstrates consciousness of guilt).

We also conclude that trial counsel was not ineffective for failing to object to the admission of the autopsy photographs.[] It is likely that the trial court would have admitted the contested photographs even over an objection because they were relevant to the nature, type, and location of the victim's injuries. The fact that the photographs may have aroused some passion or prejudice did not render them inadmissible in evidence. *See Mills*, 450 Mich. at 77. Trial counsel was not required to make a futile objection. *See People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Again, even assuming that defense counsel objected and successfully precluded the admission of some or all of the contested photographs, we are not persuaded that the outcome of trial would have differed because the prosecution presented overwhelming evidence of defendant's guilt.

*Waire*, 2019 WL 6340826, at *4–5 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts a violation of the Michigan Rules of Evidence or other state law, he fails to state a claim upon which

habeas relief may be granted. As discussed *supra*, federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 67–68. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76.

Second, Petitioner fails to establish that the admission of the disputed photographs violated his due process rights and denied him a fair trial. The Supreme Court has stated that just because a relevant photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. California*, 314 U.S. 219, 228 (1941). The Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893–94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)); *Franklin v. Bradshaw*, 695 F.3d 439, 456–57 (6th Cir. 2012) (rejecting petitioner's argument that admission of 18 autopsy photographs of victims rendered state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (affirming

34

district court's denial of habeas relief on claim challenging the admission of victim photographs because it refuted the petitioner's account of the victim's death).

Petitioner argues that, in his case, admission of the photographs violated his constitutional rights because the photographs "lacked significant probative value" and "[a]ny value the photographs had in 'corroborating' this undisputed expert testimony was marginal at best and therefore substantially outweighed by the risk of unfair prejudice." (ECF No. 2, PageID.74–75.) The Court disagrees. In this case, the victim photographs had probative value that was not substantially outweighed by the risk of unfair prejudice. As explained by the Michigan Court of Appeals, the photographs identified the victim, depicted the extent, severity, and nature of his injuries, and were relevant to show how the victim died and the perpetrator's state of mind. *Waire*, 2019 WL 6340826, at *4; *see also id*. at *4 n.3. The Court agrees with this reasoning. Petitioner fails to establish that the admission of the victim photographs was erroneous, violated due process, or otherwise rendered his trial fundamentally unfair.

Petitioner also fails to establish that defense counsel was ineffective for failing to object to the admission of the photographs. (ECF No. 2, PageID.77.) Given the Michigan Court of Appeals' ruling that the evidence was admissible and that any error was harmless, as well as this Court's ruling that the underlying evidentiary claim lacks merit, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Like the Michigan Court of Appeals, the Court "is not persuaded that the outcome of trial would have differed" even with exclusion of some or all of the photographs "because the prosecution presented overwhelming evidence of defendant's guilt." *Waire*, 2019 WL 6340826, at *5. Petitioner fails to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

  *iv.* *Admission of Co-Defendant's Prior Testimony*

36

In his final issue, Petitioner asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting co-defendant Joeviair Kennedy's preliminary examination testimony at trial. (ECF No. 2, PageID.80.) Respondent contends that this claim lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). One of the main concerns of the Confrontation Clause is to ensure the reliability of evidence through cross-examination. *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause thus prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *see also Miller v. MacLaren*, 737 F. App'x 269, 275 (6th Cir. 2018).

A witness is "unavailable" for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. *Winn v. Renico*, 175 F. App'x 728,

733 (6th Cir. 2006). When a witness refuses to testify, he or she is unavailable whether the refusal to testify is based upon privilege or is punishable by contempt. *See United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986) (quoting *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir. 1980)); *see also Green v. MacLaren*, No. 17-1249, 2017 WL 3973956, at *2 (6th Cir. Aug. 2, 2017).

While the Sixth Circuit has noted that there is "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes," *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–38 (6th Cir. 2010) (citing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)), the Supreme Court has never held that a defendant is denied the right of confrontation when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Al-Timimi*, 379 F. App'x at 438. In fact, the Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony);

*Barber v. Page*, 390 U.S. 719, 725–26 (1968) (preliminary hearing testimony).

The Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> '[T]he Sixth Amendment bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.' *People v. Dendel* (On Second Remand), 289 Mich. App. 445, 453; 797 N.W.2d 645 (2010). Prior testimony, such as that given during a preliminary examination, is testimonial and its admission at trial implicates a defendant's confrontation right. *See People v. Bruner*, 501 Mich. 220, 229; 912 N.W.2d 514 (2018). A witness invoking the Fifth Amendment as justification for not testifying at trial is an unavailable witness. *See People v. Meredith*, 459 Mich. 62, 65-66; 586 N.W.2d 538 (1998). As to the requirement that defendant had a prior opportunity for cross-examination, "'[t]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *People v. Sardy* (On Remand), 318 Mich. App. 558, 564; 899 N.W.2d 107 (2017), quoting *United States v. Owens*, 484 U.S. 554, 559-560; 108 S. Ct. 838; 98 L. Ed. 2d 951 (1988) (quotation marks and citation omitted).
>
> In this instance, on the first day of defendant's trial, a colloquy between the trial court and Kennedy ended with the court

asking Kennedy if he wished to waive his Fifth Amendment right and testify. Kennedy answered, "No, I do not." Asked by the trial court if he wished to remain silent, Kennedy answered, "Yes." Based on this exchange, the trial court declared Kennedy an unavailable witness and his testimony admissible under MRE 804(b)(1).

Rule 804(b)(1) of the Michigan Rules of Evidence provides that, where a witness is unavailable, the hearsay rule does not exclude testimony given by that witness at an earlier proceeding if the party against whom the testimony is offered had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Defendant does not contest that he had an opportunity to develop testimony by cross-examination of Kennedy. Nor can he. The record shows that defense counsel's lengthy cross-examination of Kennedy at the preliminary examination took up 40 pages of transcript. At issue, however, is whether defendant had a "similar motive" to develop the testimony. Defendant suggests that defense counsel "lacked the motivation" to impeach Kennedy or his credibility at the preliminary examination. Moreover, defendant urges this Court "to recognize a rule that cross-examination conducted at a preliminary hearing does not satisfy the confrontation clause" because the purpose of the preliminary hearing is not to determine guilt or innocence; therefore, defendant did not have a similar motive to develop Kennedy's testimony. We decline to do so.

Among the factors to determine whether a party had a similar motive to examine a witness at the prior proceeding are:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings–both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). *People v. Farquharson*, 274 Mich. App. 268, 278; 731 N.W.2d 797 (2007).

The purpose of the preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v. Johnson*, 427 Mich. 98, 104; 398 N.W.2d 219 (1986) (quotation marks and citation omitted). The prosecution's purpose in presenting Kennedy's testimony at the preliminary examination and at trial was to show that defendant committed the charged crimes. Thus, defendant had an "interest of substantially similar intensity" in proving or disproving Kennedy's testimony at the preliminary examination as he did at trial. *Farquharson*, 274 Mich. App. at 278. Furthermore, despite the lower burden of proof at a preliminary investigation as compared to trial, defendant had a similar motive to cross-examine Kennedy, i.e., to show that Kennedy could not credibly and reliably testify that he killed Jones with malice during the commission of an armed robbery. *See* MCL 750.316(1)(b); *Farquharson*, 274 Mich. App. at 278. Our review of the cross-examination leads us to

41

conclude that counsel vigorously challenged Kennedy's memory, credibility, and prior accounts of the shooting. Because the same issues were at stake in the preliminary examination and the trial, defendant had a similar interest in the issues relative to Kennedy, and defense counsel rigorously cross-examined Kennedy during the preliminary examination, we conclude that defendant had both an opportunity and a similar motive to develop Kennedy's testimony by cross-examination. Thus, the requirements of MRE 804(b)(1) and defendant's confrontation right were satisfied.

*Waire*, 2019 WL 6340826, at *5–6 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record reveals that the trial court conducted a preliminary examination in which both parties had the opportunity to question co-defendant Kennedy – and did so. The prosecution subsequently produced Kennedy to testify at trial, but he refused to do so based upon his Fifth Amendment rights. Given such circumstances, Kennedy was properly deemed unavailable to testify at trial. The record also indicates that Petitioner had an adequate opportunity, and the same motive, to question Kennedy at the prior proceeding. Consequently, the admission of Kennedy's

preliminary examination testimony at trial did not violate Petitioner's confrontation rights. *See Al-Timimi*, 379 F. App'x at 438–40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (denying habeas relief on similar claim). Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court DENIES and DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues

43

presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such

showing. Accordingly, the Court DENIES a certificate of appealability.

Finally, the Court concludes that an appeal from this decision

cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the

Court DENIES Petitioner leave to proceed in forma pauperis on appeal.

This case is closed.

IT IS SO ORDERED.

Dated: March 25, 2025                      s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's
ECF System to their respective email or first-class U.S. mail addresses
disclosed on the Notice of Electronic Filing on March 25, 2025.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ
                                           Case Manager